ACCEPTED
03-16-00855-CV
14440815
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/23/2016 1:14:53 PM
JEFFREY D. KYLE
CLERK

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/23/2016 1:14:53 PM
JEFFREY D. KYLE
Clerk

No. 03-16-00855-CV

IN THE COURT OF APPEALS

3RD JUDICIAL DISTRICT

AUSTIN, TEXAS

––––––––––––––––––

In re Mark Peltier and Jonna Peltier, Appellants

––––––––––––––––––

APPELLANTS' MOTION FOR EMERGENCY STAY

JAMIE GRAHAM & ASSOCIATES, PLLC
Jamie L. Graham
State Bar No. 24027335
Audrey E. Manriquez
State Bar No. 24029704
Tower Life Building
310 S. St. Mary's St., Suite 2500
San Antonio, Texas 78205
Tel: (210) 308-6448
Fax: (210) 308-5669
E-mail: jamie@jamiegrahamlaw.com
Attorneys for Appellants

TO THE HONORABLE COURT OF APPEALS:

1. Appellants are Mark Peltier and Jonna Peltier. Real Party in interest is Jacek R. Bogle. Appellees are Patrick Smith and Debbie Smith.

2. An Order of Enforcement by Contempt and Suspension of Commitment (Possession or Access) against Appellants was entered on December 9, 2016. (See Exhibit "A"). It is from this order, which holds Appellants in criminal contempt, that Appellants are now appealing.

3. Appellants filed a Notice of Appeal of the Order of Enforcement by Contempt and Suspension of Commitment (Possession or Access) on December 14, 2016. (See attached Exhibit "B").

3. Appellees filed a Motion to Revoke Suspension of Commitment and Order to Appear on December 15, 2016. (See Exhibit "C"). A hearing is set on said motion on December 30, 2016 at 9:00 a.m. in the 433rd Judicial District Court of Comal County, Texas. **Appellees seek to have Appellants pay criminal fines and placed in jail for alleged violations of the Order of Enforcement by Contempt and Suspension of Commitment regarding the possession and access of the child.**

4. The underlying order is "insufficient to support a contempt conviction" because the record is void of any evidence to support same. *In re R.E.D.*, 278 S.W.3d

850 (Tex. App.—Houston [1st Dist.] 2009). (See Exhibit "D"). The transcript of the trial court proceeding has been requested, and will show the following deficiencies:

a.     At no time during the proceedings was the trial court presented with the order that Appellants allegedly violated. Because the order was not before the court, there was insufficient evidence presented of Appellants' obligations under that order, or whether such order was sufficiently clear and specific to support a criminal contempt finding.

b.     Appellee Patrick Smith's testimony was the only evidence presented to support the contempt finding. Appellee's testimony does not support the trial court's finding that Appellant's violated the underlying order. Appellee Patrick Smith repeatedly testified he did not know or could not recall specific incidences of alleged violations, of which the trial court ultimately found Appellants guilty.

5.     An emergency stay of enforcement of the order and of further proceedings in the trial court is urgently necessary because Appellees are seeking to enforce the erroneous contempt order for payment of criminal fines and incarceration, which will result in a wrongful denial of Appellants' liberty.

6.     Appellants attach a certificate of compliance certifying that counsel for Appellants notified counsel for Appellees by letter that a motion for emergency stay

of the trial court proceedings would be filed. Tex. R. App. P. 52.10(a). (See Exhibit "E").

7.     Appellants request this Court grant an emergency stay of all trial court matters and of the enforcement of the void Order of Enforcement until the court hears this motion.

8.     The parties have not agreed to this Motion.

<u>Argument and Authorities</u>

9.     The Court may grant temporary relief pending its determination of an original proceeding. Tex. R. App. P. 52.10.

10.     This emergency stay is necessary to maintain the status quo of the parties and preserve the Court's jurisdiction to consider the merits of the original proceeding. *In re Reed*, 901 S.W.2d 604, 609 (Tex. App.—San Antonio 1995, orig. proceeding).

11.     Appellants attach a certification to this motion to establish the facts stated herein are true and correct. Tex. R. App. P. 102.

<u>C. Prayer</u>

12.     For the reasons stated in this motion, Appellants ask the Court for an emergency stay to maintain the status quo of the parties and preserve the Court's jurisdiction to consider the merits of Appellants' original proceeding.

Respectfully Submitted,

JAMIE GRAHAM & ASSOCIATES, PLLC
Tower Life Building
310 S. St. Mary's St., Suite 2500
San Antonio, Texas 78205
Tel. (210) 308-6448
Fax (210) 308-5669


By: Jamie L. Graham
  State Bar No. 24027335
  Audrey E. Manriquez
  State Bar No. 24029704
  Tracy E. Ross
  State Bar No. 24037399
  Sarah Anne Lishman
  State Bar No. 24086267
  Attorney for Respondents
  jamie@jamiegrahamlaw.com
  irene@jamiegrahamlaw.com

## Certificate of Conference

I certify that a reasonable effort was made to confer with counsel for Appellee in interest in regard to the relief requested herein.

/s/ Jamie L. Graham

## Certificate of Service

I certify that a true copy of this Motion for Emergency Stay was served in accordance with rule 9.5 of the Texas Rules of Appellate Procedure on each party or that party's lead counsel as follows:

***Via Facsimile: (830) 626-1414***
James E. Bettersworth
The Bettersworth Law Firm
110 W. Faust Street
New Braunfels, Texas 78130

/s/ Jamie L. Graham

## Certificate of Compliance

Under Texas Rule of Appellate Procedure 52.10(a), I certify that on December 22, 2016, I notified attorney for Appellee by facsimile that a motion for stay would be filed.

/s/ Jamie L. Graham

## Certification

I hereby certify that I have reviewed the above Motion for Emergency Stay and have concluded that every factual statement in the said Motion is supported by competent evidence.

/s/ Jamie L. Graham

SUBSCRIBED AND SWORN TO BEFORE ME on this the 23rd day of December, 2016, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas

# EXHIBIT A

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

CAUSE NO. C2013-1375D

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.R.B. | § | 433 JUDICIAL DISTRICT |
| | § | |
| A CHILD | § | COMAL COUNTY, TEXAS |

## ORDER OF ENFORCEMENT BY CONTEMPT
## AND SUSPENSION OF COMMITMENT
## (POSSESSION OR ACCESS)

On November 17, 2016 the Court heard Movants PATRICK SMITH and DEBRA SMITH's Motion for Enforcement of Possession or Access.

### Appearances

Movants, PATRICK SMITH and DEBRA SMITH, appeared in person and through attorney of record, JAMES S. BETTERSWORTH and announced ready for trial.

Respondents, JONNA G. PELTIER and JAMES PELTIER, appeared in person and through attorney of record, JAMIE GRAHAM, and announced ready for trial.

### Jurisdiction

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction over the subject matter and the parties in this case. All persons entitled to citation were properly cited.

### Record

The record of testimony was duly reported by the court reporter for the County Court at Law Number 2.

<u>Jury</u>

A jury was waived, and all questions of fact and of law were submitted to the Court.

<u>Findings</u>

The Court finds that Respondents JONNA G. PELTIER and JAMES PELTIER are guilty of separate violations of the order signed on August 20, 2015 in Cause No. C2013-1375D, styled "In the Interest of J.R.B., a Child," in the 433rd Judicial District of COMAL County that states in relevant part as follows:

A.    *Possession Order*

*Movants PATRICK SMITH and DEBBIE SMITH shall have possession of the child as follows: . . . .*
*November Forward: Starting in November and until further order of the court, PATRICK SMITH and DEBBIE SMITH shall have possession of the child on the first and third weekends of the month beginning at 6:00 p.m. on Friday and continuing until 6:00 p.m. on the following Sunday. These possession periods shall take place at PATRICK SMITH and DEBBIE SMITH's residence unless otherwise agreed.*

B.    Skype Communication

*IT IS ORDERED that PATRICK SMITH and/or DEBBIE SMITH shall be permitted to Skype with the child to supplement their periods of possession as follows:*

a.    *JONNA G. PELTIER and/or JAMES PELTIER shall make the child available for Skyping on Monday and Thursday of each week between 6:00 p.m. and 8:00 p.m.*

b.    *Telephone calls and other communications shall not be monitored by the other party unless either believes in good faith that a child is having a problem, in which case the party shall advise the other party that the call or other communication in being monitored.*

C.    Coparenting Web Site Program

*IT IS ORDERED that the parties each shall, within ten days after this Order is signed by the Court, obtain at his or her sole expense a subscription to the Family Wizard program on the Internet Web Site at www.ourfamilywizard.com. IT IS FURTHER ORDERED that the parties each shall maintain that subscription in full*

*force and effect for as long as any child is under the age of eighteen years and not otherwise emancipated.*

*IT IS ORDERED that the parties shall each communicate through the Family Wizard program with regard to all communications regarding the children, except in the case of emergency or other urgent matter.*

*IT IS ORDERED that the parties each shall timely post all significant information concerning the health, education, and welfare of the child's schedules and activities on the Family Wizard Internet Web site. However, IT IS ORDERED that neither party shall have any obligation to post on that Web site any information to which the other party already has access through other means, such as information available on the Websites of the child's schools.*

*IT IS FURTHER ORDERED that the parties shall each timely post on the Family Wizard Internet Web site a copy of any e-mail received by the party from the child's schools or any health-care provider of the child, in the event that e-mail was not also forwarded by the schools or health-care provider to the other party.*

*For purposes of this section of this order, "timely" means on learning of the event or activity, or if not immediately feasible under the circumstances, not later than twenty-four hours after learning of the event or activity.*

*By agreement, the parties may communicate in any manner other than using the Family Wizard program, but other methods of communication used by the parties shall be in addition to, and not in lieu of, using the Family Wizard program.*

The Court further finds that Respondents JONNA PELTIER and JAMES PELTIER have failed to comply with and have each violated the provisions of the order as follows:

Violation 1.July 7, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 2.July 11, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 3.July 14, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 4.July 18, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 7.July 25, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 8.July 28, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 9.August 1, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 10.August 4, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 11.August 5, 2016 – JONNA PELTIER and JAMES PELTIER denied possession to Movants.

Violation 12.August 8, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 13.August 11, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 14.August 15, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 15.August 18, 2016 – Respondents did not allow Movants to skype or talk to J.R.B..

Violation 16.August 19, 2016 – JONNA PELTIER and JAMES PELTIER denied possession to Movants.

Violation 17.August 22, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 18.August 25, 2016 – Respondents did not allow Movants to skype or talk to J.R.B..

Violation 19.August 29, 2016 – Respondents did not allow Movants to skype or talk to J.R.B.

Violation 20.JONNA PELTIER and JAMES PELTIER failed to sign up for Family Wizard.

The Court specifically finds that Respondents JONNA PELTIER and JAMES PELTIER are in contempt for each separate violation enumerated above.

The Court further finds that on the day of this hearing Respondents had the ability to comply with the prior order of the Court.

The Court further finds that attorney's fees and costs of $6,800.00 should be assessed against Respondents JONNA PELTIER and JAMES PELTIER.

## Relief Granted

IT IS ADJUDGED that Respondents JONNA PELTIER and JAMES PELTIER are in contempt for each separate violation enumerated above.

## Criminal Contempt

IT IS ORDERED that JONNA PELTIER shall pay assessed a fine of two thousand dollars

($2,000.00) and confinement in the county jail of Comal County, Texas for a period of ninety (90) days for each violation enumerated above. IT IS THEREFORE ORDERED that Respondent JONNA PELTIER is committed to the county jail of Comal County, Texas for a period of ninety (90) days for each separate violation enumerated above. IT IS ORDERED that each period of confinement assessed in this order for JONNA PELTIER shall run and be satisfied concurrently, not to exceed a cumulative total of ninety (90) days.

IT IS ORDERED that JAMES PELTIER shall pay assessed a fine of two thousand dollars ($2,000.00) and confinement in the county jail of Comal County, Texas for a period of ninety (90) days for each violation enumerated above. IT IS THEREFORE ORDERED that Respondent JAMES PELTIER is committed to the county jail of Comal County, Texas for a period of ninety (90) days for each separate violation enumerated above. IT IS ORDERED that each period of confinement assessed in this order for JAMES PELTIER shall run and be satisfied concurrently, not to exceed a cumulative total of ninety (90) days.

## Additional Periods of Possession

IT IS FURTHER ORDERED that Movants PATRICK SMITH and DEBRA SMITH shall have four (4) 4 additional days of possession to compensate for the periods of possession denied to be completed as follows: 12/19/16 and 1/9/17, 1/23/17 and 2/6/17.

. Pick up and drop off will be as previously ordered.

## Suspension of Commitment

IT IS FURTHER ORDERED that commitment is suspended and that the Respondents be placed on community supervision for a period of ten years on the following terms and conditions:

1.    IT IS ORDERED that Respondents JONNA PELTIER and JAMES PELTIER, within thirty (30) days of this order, each pay a fine of $2,000.00 as hereinabove ordered. This fine shall be paid to the

District Clerk of Comal County, Texas.

2.      IT IS ORDERED that Respondents JONNA PELTIER and JAMES PELTIER, within thirty (30) days of this order, pay $6,800.00 to Movants as reasonable and necessary attorney's fees. This payment shall be made directly to JAMES S. BETTERSWORTH via cash, cashier's check, or money order AT 110 West Faust Street, New Braunfels, Texas 78130.

3.      IT IS ORDERED that Respondents JONNA PELTIER and JAMES PELTIER comply with all prior orders of the Court.

## Attorney's Fees

IT IS ORDERED that judgment is awarded to JAMES S. BETTERSWORTH in the amount of six thousand eight hundred dollars ($6,800.00) for reasonable attorney's fees, expenses, and costs, with interest at 5 percent per year compounded annually from the date the judgment is signed until paid. The judgment, for which let execution issue, is awarded against JONNA G. PELTIER and JAMES PELTIER, Respondents, and Respondents are ORDERED to pay those fees, expenses, costs, and interest, by cash, cashier's check, or money order, directly to JAMES S. BETTERSWORTH at 110 West Faust Street, New Braunfels, Texas 78130 on or before 5:00 p.m. on December 27, 2016. JAMES S. BETTERSWORTH may enforce this judgment for fees, expenses, and costs in the attorney's own name by any means available for the enforcement of a judgment for debt. The Court finds that enforcement of the order is necessary to ensure the child's physical or emotional health or welfare. IT IS THEREFORE ORDERED that the attorney's fees and costs awarded herein may be enforced by any means available for the enforcement of child support, including contempt but not including income withholding. Any amounts paid under paragraph 2 above shall be credited against this judgment.

## Relief Not Granted

All relief requested and not expressly granted is denied.

SIGNED ON _Decemh 9, 2014_.

_(signature)_

JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

The Bettersworth Law Firm
110 W. Faust Street
New Braunfels, Texas 78130
Tel: 830/606-0404
Fax: 830/626-1414

By: _(signature)_

JAMES S. BETTERSWORTH
Attorney for Movants
State Bar No. 24005342
james@bettersworthlaw.com

Jamie Graham & Associates, PLLC
Tower Life Building
310 S. St. Mary's Street, Suite 2500
San Antonio, Texas 78205
Tel: 210/308-6448
Fax: 210/308-5669

By _(signature)_ with permission arr

JAMIE GRAHAM
Attorney for Respondents
State Bar No. 24027335
irene@jamiegrahamlaw.com


EXHIBIT B

FILED   Shari Peterson

C2013-1375D
12/14/2016 9:53:43 AM
Heather N. Kellar
Comal County
District Clerk

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

NO. C2013-1375D

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.R.B. | § | 433RD JUDICIAL DISTRICT |
| | § | |
| A CHILD | § | COMAL COUNTY, TEXAS |

NOTICE OF APPEAL

This Notice of Appeal is filed by Jonna G. Peltier and James Peltier, Respondent, a party to this proceeding who seeks to alter the trial court's judgment or other appealable order.

1.     The trial court, cause number, and style of this case are as shown in the caption above.

2.     The judgment or order appealed from was signed on December 9, 2016.

3.     Jonna G. Peltier and Mark Peltier desires to appeal from all portions of the judgment.

4.     This appeal is being taken to the 3rd Court of Appeals.

5.     This notice is being filed by Jonna G. Peltier and James Peltier.

Respectfully submitted,

JAMIE GRAHAM & ASSOCIATES, PLLC
Tower Life Building
310 S. St. Mary's St., Suite 2500
San Antonio, Texas 78205
Tel. (210) 308-6448
Fax (210) 308-5669

By: _____
Jamie L. Graham   with permission a

*SLM*

State Bar No. 24027335
Audrey E. Manriquez
State Bar No. 24029704
Attorney for Petitioner

### Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on December _14_, 2016.

Jamie L. Graham
Attorney for James and Jonna Peltier



# EXHIBIT C

FILED
Shari Peterson

C2013-1375D
12/15/2016 5:49:20 PM
Heather N. Kellar
Comal County
District Clerk

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

## CAUSE NO. C2013-1375D

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.R.B. | § | 433 JUDICIAL DISTRICT |
| | § | |
| A CHILD | § | COMAL COUNTY, TEXAS |

## MOTION TO REVOKE SUSPENSION OF COMMITMENT AND ORDER TO APPEAR

This Motion to Revoke Suspension of Commitment is brought by PATRICK SMITH and DEBRA SMITH, Movants, who request the Court to revoke the suspension of a commitment previously ordered by this Court. Respondent JONNA G. PELTIER, may be served with process at 707 North I.H. 35, Apt. #806, New Braunfels, Texas 78130. Respondent JAMES PELTIER, may be served with process at 707 North I.H. 35, Apt. #806, New Braunfels, Texas 78130. In support, Movant shows:

1.      On November 17, 2016 this Court heard the Movants' Motion for Enforcement and a ruling was rendered. On December 9, 2016 the Court signed an Order of Enforcement by Contempt and Suspension of Commitment that appears of record with this Court in which Respondents were found to be in contempt of this Court. That order states in relevant part as follows:

*"Criminal Contempt*

*IT IS ORDERED that JONNA PELTIER shall pay assessed a fine of two thousand dollars ($2,000.00) and confinement in the county jail of Comal County, Texas for a period of ninety (90) days for each violation enumerated above. IT IS THEREFORE ORDERED that Respondent JONNA PELTIER is committed to the county jail of Comal County, Texas for a period of ninety (90) days for each separate violation enumerated above. IT IS ORDERED that each period of confinement assessed in this order for JONNA PELTIER shall run and be satisfied concurrently, not to exceed a cumulative total of ninety (90) days.*

IT IS ORDERED that JAMES PELTIER shall pay assessed a fine of two thousand dollars ($2,000.00) and confinement in the county jail of Comal County, Texas for a period of ninety (90) days for each violation enumerated above. IT IS THEREFORE ORDERED that Respondent JAMES PELTIER is committed to the county jail of Comal County, Texas for a period of ninety (90) days for each separate violation enumerated above, IT IS ORDERED that each period of confinement assessed in this order for JAMES PELTIER shall run and be satisfied concurrently, not to exceed a cumulative total of ninety (90) days.

### Additional Periods of Possession

IT IS FURTHER ORDERED that Movants PATRICK SMITH and DEBRA SMITH shall have four (4) 4 additional days of possession to compensate for the periods of possession denied to be completed as follows: 12/19/16; 01/09/17; 01/23/17 and 02/06/17. Pick up and drop off will be as previously ordered.

### Suspension of Commitment

IT IS FURTHER ORDERED that commitment is suspended and that the Respondents be placed on community supervision for a period of ten years on the following terms and conditions:

1. IT IS ORDERED that Respondents JONNA PELTIER and JAMES PELTIER, within thirty (30) days of this order, each pay a fine of $2,000.00 as hereinabove ordered. This fine shall be paid to the District Clerk of Comal County, Texas.

2. IT IS ORDERED that Respondents JONNA PELTIER and JAMES PELTIER, within thirty (30) days of this order, pay $6,800.00 to Movants as reasonable and necessary attorney's fees. This payment shall be made directly to JAMES S. BETTERSWORTH via cash, cashier's check, or money order at 110 West Faust Street, New Braunfels, Texas 78130.

3. IT IS ORDERED that Respondents JONNA PELTIER and JAMES PELTIER comply with all prior orders of the Court."

2. Respondents have failed to comply with the terms and conditions of suspension as follows:

a.      Respondents failed to allow Movants the opportunity to skype or talk to J.R.B. on 11/17/2016 as required by the Court's order;

b.      Respondents denied possession and access of J.R.B. to Movants on 11/18/2016;

c.      Respondents failed to appear with J.R.B. at the exchange location on 11/18/2016;

d.      Respondents failed to allow Movants the opportunity to skype or talk to J.R.B. on 11/21/2016 as required by the Court's order;

e.      Respondents failed to allow Movants the opportunity to skype or talk to J.R.B. on 12/01/2016 as required by the Court's order;

f.      Respondents denied possession and access of J.R.B. to Movants on 12/02/2016;

g.      Respondent's failed to appear with J.R.B. at the exchange location on 11/18/2016;

h.      Respondents failed to allow Movants the opportunity to skype or talk to J.R.B. on 12/05/2016 as required by the Court's order;

i.      Respondents failed to allow Movants the opportunity to skype or talk to J.R.B. on 12/08/2016 as required by the Court's order.

Movant requests that the Court order Respondents' arrest by warrant and that Respondents be brought promptly before the Court after arrest.

Movants request that the previous suspension of commitment be revoked and that Respondents be committed in accordance with the prior order.

3.      Movant objects to the assignment of this matter to an associate judge for a trial on the merits or presiding at a jury trial.

4.      It was necessary to secure the services of JAMES S. BETTERSWORTH, a licensed attorney, to enforce and protect the rights of PATRICK SMITH and the child the subject of this suit. Respondents should be ordered to pay reasonable attorney's fees, expenses, and costs, and a judgment should be rendered in favor of the attorney and against Respondents and be ordered paid directly to the undersigned attorney, who may enforce the judgment in the attorney's own name. Enforcement of the order

is necessary to ensure the child's physical or emotional health or welfare.  The attorney's fees and costs should be enforced by any means available for the enforcement of child support including contempt but not including income withholding.  Movant requests postjudgment interest as allowed by law.

Movant requests that the suspension of commitment previously ordered be revoked and that Respondents be committed to the county jail in accordance with the prior order.

Movant prays for attorney's fees, expenses, costs and interest and for all further relief authorized by law.

Respectfully submitted,

THE BETTERSWORTH LAW FIRM
110 W. Faust Street
New Braunfels, Texas 78130
Tel: (830) 606-0404
Fax: (830) 626-1414

By:_____
JAMES S. BETTERSWORTH
State Bar No. 24005342
bettersworth@bettersworthlaw.com
Attorney for Movants

## Verification

The undersigned states under oath: "I am Movant in the foregoing Motion to Revoke Suspension of Commitment. I have personal knowledge of the facts and allegations stated in it, and they are true and correct."

_____
PATRICK SMITH, Movant

SIGNED under oath before me on _December 15, 2016_



JACKIE J. MERCER
Notary Public, State of Texas
Comm. Expires 03-09-2019
Notary ID 2668072

_____
Notary Public, State of Texas

## Verification

The undersigned states under oath: "I am Movant in the foregoing Motion to Revoke Suspension of Commitment. I have personal knowledge of the facts and allegations stated in it, and they are true and correct."

_____
DEBRA SMITH, Movant

SIGNED under oath before me on _December 15, 2016_

JACKIE J. MERCER
Notary Public, State of Texas
Comm. Expires 03-09-2019
Notary ID 2668072

_____
Notary Public, State of Texas

In the Interest of J.R.B., a Child; Motion to Revoke Suspension of Commitment and Order to Appear
Page 5

## Order to Appear

Respondent, JONNA G. PELTIER, is ORDERED to appear before this Court on ~~JANUARY 30,~~ December

2016 at 9:00 a.m. and respond to this Motion to Revoke Suspension of Commitment. The purpose of this

hearing is to determine whether Respondent has violated one or more terms or conditions of the prior

suspension of commitment as alleged in this Motion to Revoke Suspension of Commitment, whether a further

attorney's fee and costs should be assessed against Respondent, and whether Respondent should be

immediately confined in jail as assessed in the prior order.

It is further ordered that any authorized person eighteen years of age or older who is not a party to

or interested in the outcome of this suit may serve any citation, notice, or process in this case.

SIGNED on _____12-19-16_____

JUDGE PRESIDING

STATE OF TEXAS
COUNTY OF COMAL
I certify this to be a true and correct
copy of the record FILED & RECORDED
in the Official Court records of District
Court on this date and time stamped
thereon.

Heather H. Kellar
Comal County District Clerk
By

In the Interest of J.R.B., a Child; Motion to Revoke Suspension of Commitment and Order to Appear
Page 6

## Order to Appear

Respondent, JAMES PELTIER, is ORDERED to appear before this Court on ~~JANUARY~~ December 30, 2016 at 9:00 a.m. and respond to this Motion to Revoke Suspension of Commitment. The purpose of this hearing is to determine whether Respondent has violated one or more terms or conditions of the prior suspension of commitment as alleged in this Motion to Revoke Suspension of Commitment, whether a further attorney's fee and costs should be assessed against Respondent, and whether Respondent should be immediately confined in jail as assessed in the prior order.

It is further ordered that any authorized person eighteen years of age or older who is not a party to or interested in the outcome of this suit may serve any citation, notice, or process in this case.

SIGNED on ___12-19-16___.

_____
JUDGE PRESIDING

STATE OF TEXAS
COUNTY OF COMAL
I certify this to be a true and correct
copy of the record FILED & RECORDED
in the Official Court records of District
Court on this date and time stamped
thereon.

Heather N. Kellar
Comal County, District Clerk
B

In the Interest of J.R.B., a Child; Motion to Revoke Suspension of Commitment and Order to Appear
Page 7



EXHIBIT D

Not a Legal Professional? Visit our consumer site

Register | Log In



The case management system preferred by high volume firms   FILEVINE

FindLaw   Caselaw   Texas   TX Ct. App.   In re R.E.D.

# In re R.E.D.

Print                                Font size:   A   A   Revert

## Court of Appeals of Texas,Houston (1st Dist.).

### In re R.E.D., Relator.

### No. 01-08-00727-CV.

### Decided: February 05, 2009

Panel consists of Justices TAFT, KEYES, and ALCALA. Karl E. Hays, Austin, TX, Robert J. Piro, Robert J. Piro, PLLC, Houston, TX, for Relator. Daryl L. Moore, Daryl L. Moore, P.C., Marshall Davis Brown Jr., Pavlas & Brown, LLP, Houston, TX, for Real Party in Interest.
OPINION

In this original proceeding, relator R.E.D. seeks a writ of habeas corpus to secure his release from a commitment order issued by the 312th Judicial District Court of Harris County. This commitment order arises from a motion for enforcement filed by the real party in interest, S.C.D., relator's estranged wife, who alleged that relator violated an agreed order that restricted both relator and S.C.D. from selling personalty or realty in either their separate or their community estates. In four issues, relator argues that the trial court's commitment order is void because (1) there is no proof that relator intentionally violated the agreed order; (2) real party in interest's motion to enforce the agreed order is defective and failed to give him fair notice of the charges against him; (3) the order relator is accused of violating is ambiguous and unclear; and (4) the trial court lacked jurisdiction to order that he be incarcerated until he pays $367,537.00 into the registry of the court.

We decline to issue the writ and withdraw our temporary order to stay enforcement of the trial court's commitment order.

Background

Relator filed an original petition for divorce against S.C.D. on July 6, 2006. The parties jointly filed a motion entitled "Agreed Mutual Temporary Injunctions," which governed the parties' financial transactions during the interval between the initial filing and the final resolution of the divorce proceeding. In the joint motion on temporary injunctions, the parties agreed to the following language:

4.3 It is ordered that Petitioner, R.E.D. and Respondent S.C.D. are enjoined from:

k. Selling, transferring, assigning, mortgaging, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty or realty, and whether separate or community, except as specifically authorized by order of this Court.

The trial court signed the order enforcing the parties' joint motion ("the agreed order") on July 31, 2006.

On May 5, 2008, S.C.D. filed her "Third Amended Motion for Enforcement, or in the Alternative, Motion for Clarification," alleging that relator had violated the agreed order. S.C.D. alleged that, on January 16, 2008, relator testified under oath before the trial court that he had sold stock valued at $600,000 from the parties' Ameritrade account.

The trial court convened an enforcement hearing on July 15, 2008 to determine whether relator had violated the agreed order. Relator reiterated his prior testimony that he did sell stock from the parties' Ameritrade account, and he added that he sold the stock during the period between December 2007 and January 2008 because he "wanted to pay debt." However, relator disputed S.C.D.'s claim that the stock was valued at $600,000. He testified that he made a $200,000 payment to their children's trust from the proceeds of the sale because he "wanted to cut the interest amount down," although he admitted the payment was not due for another 12 months. He testified that he placed approximately $367,000 generated from the stock sale in a checking account.

## FindLaw Career Center

Attorney
Corporate Counsel
Academic
Judicial Clerk
Summer Associate
Intern
Law Librarian

Search Jobs   Post a Job | View More Jobs

View More



### FindLaw's Legal Grounds
Latest funny legal news delivered to your inbox.
FindLaw.com/Newsletters

### FindLaw's Legal Grounds
Latest humorous legal news delivered to your inbox.
FindLaw.com/Newsletters

### FindLaw Newsletters
Get the latest in humorous legal news.
FindLaw.com/Newsletters

Relator reiterated that he sold stock because he chose to sell the stock out of want rather than need, and he admitted that he had no authorization from S.C.D. or the trial court to do so. Relator also admitted that he could have sold stock that had already been stipulated as his separate property, but he decided to liquidate the Ameritrade account even though its characterization as separate or community property was in dispute.

Based on relator's testimony and other evidence presented at the hearing, the trial court found that relator had violated the agreed order and signed an order that included a written judgment of contempt. The trial court also signed a commitment order directing respondent, Harris County Sheriff Tommy Thomas, to take relator into custody and to confine relator for 10 days in the Harris County Jail. The commitment order also directed the sheriff to confine relator beyond the 10-day sentence until relator deposited the $367,000 generated from the stock sale into the trial court's registry. Relator filed a petition with this Court seeking a writ of habeas corpus along with a motion for temporary relief. On August 28, 2008, this Court granted temporary relief by staying the commitment order.

Standard of Review on Habeas Corpus

Here, the agreed order relator was held in contempt for violating was issued pursuant to section 6.502 of the Texas Family Code. Section 6.502 provides, in relevant part:

Temporary Injunction and Other Temporary Orders

(a) While a suit for dissolution of a marriage is pending and on the motion of a party or on the court's own motion after notice and hearing, the court may render an appropriate order, including the granting of a temporary injunction for the preservation of the property and protection of the parties as deemed necessary and equitable and including an order directed to one or both parties.

(7) prohibiting the parties, or either party, from spending funds beyond an amount the court determines to be for reasonable and necessary living expenses[.]

Tex. Fam.Code Ann. § 6.502 (Vernon 2006).

A trial court may enforce any temporary court order in a divorce suit by punishing a violation with contempt. Tex. Fam.Code Ann. § 6.506 (Vernon 2006); see also Ex parte Butler, 523 S.W.2d 309, 311 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ) (court denied writ of habeas corpus after husband violated clearly defined temporary trial court order and wife filed motion for contempt). Relator is charged with constructive contempt. Constructive contempt, as opposed to direct contempt, involves conduct by the relator that occurs outside the presence of the trial court. Ex parte Gordon, 584 S.W.2d 686, 688 (Tex.1979). Such conduct includes the relator's failure to comply with a court order. Id.

A judgment of contempt may be either civil or criminal. Ex parte Werblud, 536 S.W.2d 542, 545 (Tex.1976). The purpose of civil contempt is remedial and coercive. Id. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey an order of the court when obedience will benefit an opposing litigant. Id. "Imprisonment is conditional upon obedience and therefore the civil contemnor 'carries the keys of (the) prison in (his) own pocket.'" Id. (quoting Shillitani v. United States, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966)). When a relator has committed civil contempt, he may procure his release by compliance with the provisions of the court's order. Id. Criminal contempt, by contrast, is punitive in nature in that the sentence is not conditioned upon a promise of future performance; rather, the contemnor is being punished for a completed act that affronted the dignity and authority of the court. Werblud, 536 S.W.2d at 545 (citing Shillitani, 384 U.S. at 368, 86 S.Ct. at 1534). Here, the judgment of contempt entered against relator by the trial court is a judgment of both civil and criminal contempt because it both punishes relator by ordering him confined for 10 days for his violation of the agreed order and coerces his compliance with the agreed order by ordering his continued confinement until he places the $367,000 received from the stock sale into the registry of the court.

We issue a writ of habeas corpus to release a relator from the trial court's commitment order only when the order is void. Ex parte Barnett, 600 S.W.2d 252, 254 (Tex.1980); In re Parr, 199 S.W.3d 457, 460 (Tex.App.-Houston [1st Dist.] 2006, no pet.). In order to hold that the trial court's commitment order is void, we must find either the trial court lacked jurisdiction to enforce the order or the trial court "deprived relator of his liberty without due process." Barnett, 600 S.W.2d at 255 (citing Ex parte Gordon, 584 S.W.2d 686 (Tex.1979)).

To satisfy the due process requirements necessary to support a criminal contempt conviction, there must be proof beyond a reasonable doubt that (1) the court issued a reasonably specific order, (2) the contemnor violated the court's order, and (3) the contemnor's violation was a willful act. Ex parte Chambers, 898 S.W.2d 257, 259 (Tex.1995). We do not determine whether the relator is guilty or innocent of contempt; our role, instead, is to determine whether the relator has been illegally imprisoned. Gordon, 584 S.W.2d at 688. The order is presumed to be valid until the relator discharges his burden of proving otherwise. In re Turner, 177 S.W.3d 284, 288 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). Unless the petition for writ of habeas corpus shows that the judgment of contempt is void on its face or is so completely without evidentiary support as to be rendered void, the petition must be denied. Butler, 523 S.W.2d at 311. An appellate court lacks jurisdiction to weigh the proof to determine whether it preponderates for or against the relator; it has jurisdiction only to determine whether the judgment is void. Chambers, 898 S.W.2d at 259-60.

Fair Notice of the Charges

In his second issue, relator argues that S.C.D.'s motion for enforcement, upon which the trial court's commitment order is based, is defective and does not provide relator fair notice of the charges against him. Relator argues that S.C.D.'s motion to enforce merely charged relator with testifying that he sold the Ameritrade stock. Relator argues that S.C.D.'s motion was defective because the allegations made in the motion to enforce neither charged him with violating the agreed order nor identified the particular stock transactions he made.

Due process requires that a constructive contemnor must have full notice of any charges against him and a reasonable opportunity to rebut those charges. Gordon, 584 S.W.2d at 688. The trial court must issue adequate legal process to apprise the contemnor of the charges. Id.; Ex parte Barlow, 899 S.W.2d 791, 795 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). A judgment of contempt entered without proper notification is a nullity. Gordon, 584 S.W.2d at 688; Barlow, 899 S.W.2d at 795.

Here, S.C.D. specifically set out, in her motion to enforce, the language from the agreed order for mutual temporary injunctions that relator helped to prepare:

4.3   It is ordered that Petitioner, R.E.D. and Respondent S.C.D. are enjoined from:

k.   Selling, transferring, assigning, mortgaging, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty or realty, and whether separate or community, except as specifically authorized by order of this Court.

S.C.D. alleged in her "Third Amended Motion for Enforcement, or in the Alternative, Motion for Clarification":

On January 16, 2008, Petitioner R.E.D. testified before this Court that he had sold all issues of stock with the exception of three issues in the parties' Ameritrade account and that the sale generated close to $600,000.

The motion to enforce specifically alleged that relator admitted under oath that he had sold $600,000 in stock from the parties' Ameritrade account, thus giving relator notice of the alleged non-compliance-relator's admission that he sold personalty from a community asset. The motion to enforce also alleged a specific date, a specific account, and a specific monetary sum sufficient to give relator fair notice of the charges against him. Because of the specificity of the allegations made, relator had sufficient notice of the charges asserted against him. We conclude that S.C.D.'s motion is not defective and that it provides relator with the necessary details to give relator fair notice.

Relator also had an opportunity to defend himself against the charges made against him in the motion to enforce. On July 15, 2008, the trial court held an enforcement hearing on S.C.D.'s motion to enforce. At the hearing, the following exchange took place between relator and counsel for S.C.D.:

[S.C.D.]: This is the fourth hearing we've had in this matter, where you've spoken about the $600,000 that you took out of Ameritrade, correct?

[Relator]: I suspect that's correct.

[S.C.D.]: Excuse me. Why not? Do you recall my question?

[Relator]: Will you be kind enough to repeat it?

[S.C.D.]: This is at least, today, this hearing is at least the third time, at least the third time you've testified that you withdrew $600,000 from the Ameritrade account, correct?

[Relator]: I believe that's correct.

[S.C.D.]: Now the first time you testified to that was back in January of ' 08, that would have been nearer in time that the Ameritrade account was, the stocks were negotiated out of it?

[Relator]: Yes.

Counsel for S.C.D. began to ask relator about the location and the amount of the remaining sums available from the Ameritrade account sales.

[S.C.D.]: What I think you've told me, and if I come up anywhere wrong, stop me, I think you told us under oath more than once, even today as a matter of fact, that you sold about $600,000 worth of Ameritrade stock in December in ' 07. Is that what you testified to?

[Relator]: That is a fact, yes.

[S.C.D.]: Okay. I think you've testified that after looking at all of the Frost Bank account statements from December through April of this year, that we can, that you could only identify $367,000 that was deposited in Frost Bank, excuse me, that Frost Bank account, correct?

[Relator]: Correct.

Based on this testimony and additional evidence presented at the hearing, the trial court made the following finding:

The Court, having heard the evidence and argument of counsel, and having taken judicial notice of the Court's file, finds that R.E.D. is guilty of contempt for willfully, intentionally and contemptuously disobeying and

violating this Court's Agreed Mutual Temporary Injunctions issued on July 31, 2006, by selling, transferring or otherwise alienating stocks held in the parties' Ameritrade account for the approximate sum of $367,573 in December of 2007 and/or January of 2008, while the Agreed Mutual Temporary Injunctions were in full force and effect.

In his briefing to this Court, relator does not dispute his testimony at the hearing on January 16, 2008, in which he admitted that he sold the stock.   Relator repeated his testimony at the enforcement hearing on July 15, 2008.   S.C.D.'s allegation merely recalled relator's admission of this fact.   Such an allegation in the motion to enforce is sufficient to give relator notice of a fact to which relator admitted twice under oath.   See Ex parte Smith, 467 S.W.2d 411 (Tex.Crim.App.1971).   Because he twice testified that he sold stock in the parties' Ameritrade account during the period between December 2007 and January 2008, relator had sufficient information in the motion to identify the stock transactions in question.

Relator relies on Ex parte Carney to argue that S.C.D.'s motion to enforce is so lacking in specificity as to deny relator fair notice.   See 903 S.W.2d 345, 346-47 (Tex.1995).   Carney is inapplicable to this case.   In Carney, the relator was granted relief after a judgment creditor's motion for contempt based on the trial court's turnover order was found lacking "the requisite specificity" sufficient for fair notice.   Id. at 346.   In that case, the motion for contempt that charged relator with guilt did not give relator notice of the subject matter of the motion for contempt because the turnover order the relator was held in contempt for violating ordered the turnover of broad categories of assets and documents without identifying any specific documents or assets to be turned over.   Id. 1 Nor was any other information provided to the relator at the show cause hearing.   Id. Real party in interest in this case is not a judgment creditor;  relator is not a judgment debtor;  the order violated was not a turnover order;  and the amount of money derived from the stock sale and ordered to be placed in the registry of the court was specifically identified and traced to relator's improper sale of stock both in the motion to enforce and in the hearing.

In addition to case law, relator relies on subsection 157.002(b)(2) the Texas Family Code to argue that S.C.D. failed to meet the statutory fair notice requirements found in the Code. Relator cites to a section of the Texas Family Code applicable to motions for enforcement used in suits affecting the parent-child relationship.   See Tex. Fam.Code Ann. § 157.002(b)(2) (Vernon 2002).   Relator's reliance on subsection 157.002(b)(2) is misplaced because this subsection governs only motion for enforcement of child support orders.   See id.;  see also id. at § 157.001 ("A motion for enforcement as provided in this chapter may be filed to enforce a final order for conservatorship, child support, possession of or access to a child, or other provisions of a final order.").

We hold that relator had fair notice of the subject matter of the contempt motion.

We overrule relator's second issue.

Clear and Unambiguous Order

In his third issue, relator argues that the trial court's commitment order is void because the underlying agreed order is unclear, general, ambiguous and subject to more than one interpretation.

In order to support a judgment of contempt, the underlying decree must set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying it will readily know exactly what duties and obligations are imposed on him.   Chambers, 898 S.W.2d 257, 261.   Generally, a court order is insufficient to support a contempt conviction only when its interpretation "requires inferences or conclusions about which reasonable persons might differ."   Chambers, 898 S.W.2d at 260 (citing Ex parte MacCallum, 807 S.W.2d 729, 730 (Tex.1991)).   To prevent the enforcement of a court order, the resisting party must show that the order has a reasonable alternative construction.   Id. The order does not have to use language so specific as to counter every alternative interpretation.   Id.

Relator argues that the following two portions of the agreed order, when read together, create such ambiguity that the trial court's commitment order is void:

4.3   It is ordered that Petitioner, R.E.D. and Respondent, S.C.D. are enjoined from:

k.   Selling, transferring, assigning, mortgaging, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty or realty, and whether separate or community, except as specifically authorized by order of this Court.

4.4   It is further ordered that Petitioner, R.E.D. and Respondent, S.C.D. are authorized only as follows:

d.   To engage in acts reasonable and necessary to conduct Petitioner or Respondent's usual business and occupation.

Relator agrees that the plain meaning of section 4.3(k) of the agreed order permits only the reasonable interpretation that relator was prohibited from selling the stock in the Ameritrade account.   However, relator

argues that when section 4.3(k) is read together with section 4.4(d), the order becomes ambiguous because the trial court failed to define "usual business and occupation."

The purpose of section 4.4(d) is made clear when read in context.   The following sections comprise the entirety of section 4.4 of the agreed order:

4.4   It is further ordered that Petitioner, R.E.D. and Respondent S.C.D. are authorized only as follows:

a.   To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation and medical care;

b.   To make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit;

c.   To make withdrawals from accounts in financial institutions only for the purposes authorized by the Court's Order and

d.   To engage in acts reasonable and necessary to conduct Petitioner or Respondent's usual business and occupation.

The purpose of section 4.4 is merely to create narrow exceptions to the prohibitions outlined in section 4.3 of the agreed order of mutual temporary injunctions.   These exceptions allow the parties to use funds for basic living expenditures, business expenses, and legal help.   The exception in section 4.4(d) does not modify the language in section 4.3.   S.C.D. correctly states that the plain meaning of section 4.3(k) could be interpreted only as a clear prohibition against selling personal community property, including stock in the Ameritrade account.

Relator's own testimony established that he did not seek authorization from the trial court to sell the stock and, in so doing, violated the court order.   He failed to make any showing that the stock was sold in the "reasonable and necessary" conduct of his "usual business and occupation" or to pay necessary expenses.   Rather, relator chose to pay taxes and to make a deposit in a trust fund account that was due 12 months after relator made the deposit.   Relator testified that he sold the stock because "he wanted to" do so, and, in so doing, he chose to liquidate an account whose characterization as community property was disputed rather than to sell stock stipulated to be his separate property.

We conclude that the trial court's commitment order is valid because the agreed order was sufficiently unambiguous to give relator fair notice of the prohibitions and, therefore, the trial court's commitment order is valid.

We overrule relator's third issue.

Intentional and Willful Violation of Trial Court Order

In his first issue, relator argues that there is no proof beyond a reasonable doubt that he intentionally and willfully violated the agreed order and, therefore, the commitment order is void.

To raise an inference that a contemnor intentionally and willfully violated a court order, the contemnor must have notice of an unambiguous court order.   Ex parte Chambers, 898 S.W.2d at 261.   Here, relator had notice of the "Agreed Mutual Temporary Injunction" because relator participated in the formation of the agreed order. Paragraph 4.3 of the agreed order unambiguously prohibited relator from selling or transferring any property, whether personalty or realty, separate or community, "except as specifically authorized by order of this Court." Relator's attorney signed the agreed order, approving it on relator's behalf as to form and substance.   Relator testified he "knew all about" the language and rights set forth in the agreed order and that he knew an injunction against his actions was in place when he sold the stock.   The trial court could have found beyond a reasonable doubt that relator intentionally and willfully violated the trial court's order.

We overrule relator's first issue.

Incarceration for a Debt

In his fourth issue, relator argues that the trial court's commitment order is void because the trial court lacked jurisdiction to impose incarceration for a debt obligation.   Relator argues that the trial court's order that he pay $367,000 into the court registry is unconstitutional because the order creates a debt and also directs respondent to confined relator for failure to comply with the trial court's order.   See Tex. Const. art.  I, § 18 (providing, "[N]o person shall ever be imprisoned for debt").

A district court possesses broad powers under the Family Code to "order a division of the estate of the parties in a manner that the court deems just and right."   See Ex parte Preston, 162 Tex. 379, 382-83, 347 S.W.2d 938, 940 (1961); see also Tex. Fam.Code Ann. §§ 7.001, 7.002 (Vernon 2008).   The district court cannot order and bring about a division of the community estate unless the estate is first subjected to the court's control. Preston, 347 S.W.2d at 940.   A party who has the right of control and disposition of the community estate and who reduces a part of that estate to cash is not a debtor of the other party, but rather he is constructively a trustee in holding the community assets and may be compelled to account for the disposition of those assets by the court.   See id.   There is no question about the right of the trial court to hold a trustee in contempt of court for willfully refusing to obey an order to pay over funds held in his hands into the registry of the court in such a case.   See id. at 940-41.

Relator relies on in re Nunn to support his argument that a trial court cannot incarcerate a contemnor for a debt, even if the debt arises from the trial court's contempt judgment.   See 960 S.W.2d 649 (Tex.1997).   Nunu is distinguishable from this case.   In Nunu, the trial court's commitment order ordered the relator imprisoned until he paid an adjudicated debt for damages reimbursing a homeowner's association for expenses incurred because of the relator's conduct.   Id. at 649-50.

Here, the trial court's commitment order does not punish relator for failure to pay a damages award but for violation of an injunction in the agreed order, issued pursuant to section 6.502(a)(7) of the Texas Family Code for "the preservation of the property and protection of the parties."   See Tex. Fam.Code Ann. §  6.502(a)(7) (Vernon 2006).   A trial court in a divorce proceeding may exercise both criminal and civil contempt powers to enforce its orders when a contempt proceeding is instituted after its jurisdiction has attached.   See Werblud, 536 S.W.2d at 546-47.   The trial court's civil commitment order orders relator to place the $367,000 from the stock sale into the court's registry, and it orders him to be confined in the Harris County Jail for 10 days as punishment for his violation of the order and to be further confined until he has placed the money into the registry of the court to coerce his compliance with the order.   The trial court had the power too punish the violation of the agreed order, and it had the power to coerce relator's compliance with its order to place the $367,000 realized from the improper stock sale into the registry of the court.   Relator "carries the keys of (the) prison in (his) own pocket."   Werblud, 536 S.W.2d at 545.   The trial court had jurisdiction to issue the commitment order.

We overrule appellant's fourth issue.

Conclusion

We decline to issue a writ of habeas corpus and withdraw our August 28, 2008 temporary stay of the trial court's order of commitment.

FOOTNOTES

1.   The turnover order directed the relator to turn over to the judgment creditor "his share of stock or beneficial interests 'together with all documents or records related to same,' in seven corporations owned or controlled by [the realtor], including [his] law practice; any non-exempt partnership distributions; all non-exempt funds in every account or certificate of deposit in which [he] has an interest; all non-exempt income distributions due to [him] from all businesses [he] operates or in which he has any involvement; and all cash on hand."  Ex parte Carney, 903 S.W.2d 345, 346 (Tex.1995).

2.   "Cases of criminal contempt, where the sentence actually imposed does not exceed months imprisonment are exempted from the requirements of a jury trial."  Ex parte Werblud, 536 S.W.2d 542, 547 (Tex.1976). Relator's 10-day criminal punishment for contempt does not invoke the constitutional right to a jury.

EVELYN V. KEYES, Justice.

RESEARCH THE LAW            Cases & Codes / Opinion Summaries / Sample Business Contracts / Research An Attorney or Law Firm

MANAGE YOUR PRACTICE       Law Technology / Law Practice Management / Law Firm Marketing Services / Corporate Counsel Center

MANAGE YOUR CAREER         Legal Career Job Search / Online CLE / Law Student Resources

NEWS AND COMMENTARY        Legal News Headlines / Law Commentary / Featured Documents / Newsletters / Blogs / RSS Feeds

GET LEGAL FORMS            Legal Forms for Your Practice

ABOUT US                   Company History / Media Relations / Contact Us / Privacy / Advertising / Jobs

FIND US ON

Copyright © 2016 FindLaw, a Thomson Reuters business. All rights reserved.



EXHIBIT E



### JAMIE GRAHAM
### & ASSOCIATES, PLLC

December 22, 2016

***Via Facsimile (830) 626-1414***
Mr. James S. Bettersworth
The Betterswerth Law Firm
110 W. Faust Street
New Braunfels, Texas 78130

      RE:    **Cause No. C2013-1375D;** *In the Interest of J.R.B., A Child, In the 433rd Judicial District Court of Comal County, Texas*

Dear Mr. Bettersworth:

    In that my attempts both yesterday and today to reach you by telephone have been unsuccessful, please consider this my written notice pursuant to T.R.A.P. 52.10, that we are filing a Motion for Emergency Stay with the Third Court of Appeals, with respect to the Order of Contempt you filed in reference to the above captioned matter.

    Thank you for your prompt attention to this matter.

                    Sincerely,

                    Audrey E. Manriquez

AEM/ig
cc: Jonna and James Peltier

# Send Result Report

MFP

TASKalfa 5500i

Firmware Version  2LH_2F00.007.009 2013.11.27



12/22/2016 15:57
[2LF_1000.006.002] [2K9_1100.002.001] [2LC_7000.007.009]

Job No.: 114392          Total Time: 0°00'11"          Page: 001

## Complete

Document:          doc114392201612221155635



JAMIE GRAHAM
&ASSOCIATES, PLLC

December 22, 2016

*Via Facsimile (830) 626-1414*
Mr. James S. Bettersworth
The Betterswerth Law Firm
110 W. Faust Street
New Braunfels, Texas 78130

RE:   Cause No. C2013-1375D; *In the Interest of J.R.B., A Child, In the 433rd Judicial District Court of Comal County, Texas*

Dear Mr. Bettersworth:

In that my attempts both yesterday and today to reach you by telephone have been

| No. | Date and Time | Destination | Times | Type | Result | Resolution/ECM |
|-----|---------------|-------------|-------|------|--------|----------------|
| 001 | 12/22/16 15:57 | 18306261414 | 0°00'11" | FAX | OK | 200x100 Normal/On |